IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KIMBERLY BAKLUND                                                    PLAINTIFF

V.                                        NO. 10-5160

MICHAEL ASTRUE,
Commissioner of the Social Security Administration                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a

decision of the Commissioner of the Social Security Administration (Commissioner) denying

her claims for a period of disability and disability insurance benefits (DIB) and supplemental

security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act).

In this judicial review, the Court must determine whether there is substantial evidence in the

administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed her applications for DIB and SSI on July 3, 2008, alleging an

inability to work since May 22, 2008, due to stomach/abdominal pain, abdominal adhesions,

edema in both legs and feet, fibromyalgia, depression, anxiety, panic attack, fatigue, and memory

loss. (Tr. 131, 135).  For DIB purposes, Plaintiff maintained insured status through September

30, 2012.  (Tr. 51).  An administrative hearing was held on August 17, 2009, at which Plaintiff

appeared with counsel, and she and a co-worker testified.  (Tr. 6-41).

By written decision dated January 4, 2010, the ALJ found that during the relevant time

-1-

period, Plaintiff had an impairment or combination of impairments that were severe - mood

disorder and fibromyalgia.  (Tr. 51).  However, after reviewing all of the evidence presented,

he determined that Plaintiff's impairments did not meet or equal the level of severity of any

impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No.

4. (Tr. 51).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the
> claimant can occasionally climb, balance, crouch, stoop, kneel and crawl.  The claimant
> has moderate difficulties in maintaining concentration, persistence, and pace; the
> claimant is moderately limited in her ability to understand, remember, and carry out
> detailed instructions and appropriately respond to usual work situations and routine work
> changes.  Moderately limited means there is more than a slight limitation, but the person
> can perform in a satisfactory manner.  The claimant can do work in which interpersonal
> contact is incidental to the work performed; complexity of tasks is learned and performed
> by rote with little judgment and few variables; and supervision is simple, direct, and
> concrete.

(Tr. 53).  With the help of a vocational expert (VE), the ALJ determined that Plaintiff could

perform other work as a hand packager, sewing machine operator, or poultry processing worker.

(Tr. 59-60).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on July 21, 2010.  (Tr. 1-3).  Subsequently, Plaintiff filed this action.  (Doc.

1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 5).  Both

parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 9, 10).

**II.    Evidence Presented:**

Plaintiff was born in 1964 and received her GED.  (Tr. 131, 142).  For several years

prior to the alleged onset date of May 22, 2008, Plaintiff suffered with and was treated for

migraine headaches, lower abdominal pain, and depression.  (Tr. 220-221, 230, 232-233, 239-

249, 257-268, 273, 275, 308-309, 324, 338-341, 348, 415-419, 433-435, 438, 441-442, 446, 453, 465-466, 469, 483, 488).[1]  Plaintiff underwent an abdominal hysterectomy in 1989 (Tr. 223), and continued to suffer with abdominal adhesions thereafter.  She has had more than three and less than ten surgeries to remove the adhesions, which continue to reoccur.  (Tr. 13-14).  Upon undergoing a colonoscopy in 2007, Plaintiff was diagnosed with diverticulitis.  (Tr. 269).

On January 21, 2008, Plaintiff was seen by Dr. James W. Norys, at the Fayetteville Diagnostic Clinic, when she complained of recurrent abdominal pain and recurrent headaches. (Tr. 340-341).  Dr. Norys' impression was "recurrent abdominal pain unclear etiology."  (Tr. 341).  On January 21, 2008, Dr. Norys saw Plaintiff and noted that Plaintiff's recurrent headaches seemed to be worse on hormone replacement therapy.  (Tr. 339).  Dr. Norys also noted that Plaintiff had a history of fibromyalgia.  He suggested a trial of Lyrica 50 mg., twice daily for her fibromyalgia, hoping that it would also help with her abdominal discomfort.  (Tr. 339). On February 21, 2008, Dr. Norys gave the following impression:

> 1. Migraine headache - will increase Lyrica and continue vitamin B6, continue Imitrex - have given her a prescription for Darvon
> 2. Fibromyalgia, improved - will continue Lyrica and regular exercise
> 3. Vitamin D deficiency - will continue replacement

(Tr. 338).

On April 5, 2008, Plaintiff presented herself to Dr. William J. McGowan, and reported feeling as though she was having worsening headaches.  (Tr. 348).  Plaintiff reported she previously took Lyrica and did not think it helped, but stopped taking it three to four weeks prior to the visit, and thought it may well have helped her after all.  (Tr. 348).  She also stated that she

---

[1]All of the records in the transcript date from January 13, 1986 forward.

AO72A
(Rev. 8/82)

took Imitrex for her headaches, and that in the past they improved. (Tr. 348). Dr. McGowan

gave the following impression: "Recurrent headache in this 41 year old with history of recurrent

pelvic pain, adhesions, and migraine headaches, as well as fibromyalgia syndrome, as well as

long-term history of some anxiety." (Tr. 348). He was going to restart Plaintiff on Lyrica and

graduate her back to 75 tid, and start her on Cymbalta 30 mg., increasing to 60 mg. gradually.

(Tr. 348).

On September 9, 2008, a Mental Diagnostic Evaluation was performed for the Social

Security Administration by Terry L. Efird, Ph.D. (Tr. 361-364). Plaintiff denied any history of

psychiatric treatment, although she did report being prescribed Cymbalta for about two to three

months, but stopped taking the medication about one month previously, secondary to being unable

to afford it. She also stated that she was unsure if it was helpful. (Tr. 361-362). Plaintiff reported

she had been living with her boyfriend for the previous three and a half years, and endorsed the

ability to perform basic self-care tasks satisfactorily. (Tr. 362). She also endorsed the ability to

primarily perform household chores satisfactorily. (Tr. 362). Dr. Efird  reported that Plaintiff's

primary reason for applying for disability benefits was reportedly secondary to physical problems.

(Tr. 362). Dr. Efird diagnosed Plaintiff with:

| | |
|---|---|
| Axis I: | Major depressive disorder, moderate |
| | Anxiety disorder NOS |
| Axis II: | Deferred |
| Axis V: | 50-60 |

(Tr. 362). Dr. Efird reported that Plaintiff endorsed the ability to drive unfamiliar routes, to shop

independently, to handle personal finances satisfactorily, and to perform most activities of daily

living satisfactorily. (Tr. 364). She also reportedly went to a friend's home to help care for her

-4-

friend's mother about once a week.  Dr. Efird found that Plaintiff had the capacity to perform

basic cognitive tasks required for basic work -like activities; had no remarkable problems with

attention/concentration; and generally completed tasks assigned during the evaluation. (Tr. 364).

She was also found to have no remarkable problems with persistence.

On September 11, 2008, a Psychiatric Review Technique form was completed by Kay M.

Gale.  (Tr. 378-391).  Dr. Gale found that Plaintiff suffered from Affective Disorder and  Anxiety-

Related Disorder NOS.  (Tr. 378-383).  She also found that Plaintiff had a mild degree of

limitation in restriction of activities of daily living and difficulties in maintaining social

functioning; a moderate degree of limitation in difficulties in maintaining concentration,

persistence, or pace; and had no episodes of decompensation, each of extended duration.  (Tr.

388).  Dr. Gale found that Plaintiff seemed capable of unskilled work.  (Tr. 390).

Dr. Gale also prepared a Mental RFC Assessment on September 11, 2008.  (Tr. 392-395).

She found that Plaintiff was not significantly limited in sixteen out of twenty categories, and was

only moderately limited in four out of twenty categories.  (Tr. 392-393).  She found that Plaintiff

was able to perform work where interpersonal contact was incidental to the work performed, e.g.

assembly work; where the complexity of tasks was learned and performed by rote, with few

variables and where little judgment was used; and where supervision required was simple, direct

and concrete.  (Tr. 394).

On September 11, 2008, a Physical RFC Assessment was completed by Jim Takach.  (Tr.

370-377).  Dr. Takach found that Plaintiff could:  occasionally lift and/or carry (including upward

pulling)  20 pounds;  frequently lift and/or carry (including upward pulling) 10 pounds;  stand

and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with

-5-

normal breaks) for a total of about 6 hours in an 8-hour workday; and push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry. (Tr. 371). He found that from the available medical records, Plaintiff retained the ability to function with light work limits, and could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 372). No manipulative, communicative or environmental limitations were established. (Tr. 372-374).

In a Disability Report-Adult, dated July 3, 2008, Plaintiff reported that the illnesses that limited her ability to work were stomach/abdominal pain, abdominal adhesions, edema in both legs and feet, fibromyalgia, depression, anxiety, panic attacks, fatigue, memory loss, and severe migraine headaches. (Tr. 135). She further reported that the adhesions, fibromyalgia, and migraine headaches would not allow her to sit, stand, lift, drive, carry, concentrate or focus on job responsibilities or other simple household tasks, such as as dishes, laundry and meals. She reported that the edema would not allow her to stand or walk, and that she must elevate her legs to reduce the swelling and pain. (Tr. 135). She also reported that with her migraine headaches, she must lie down, rest in a dark room with no noise, with medication. (Tr. 135). She stated that the pain from everything affected her memory and concentration and ability to focus and complete tasks. At that time, she was taking Amitrex, Cymbalta, Darvon, and Lyrica. (Tr. 141).

In a Function Report - Adult, dated July 21, 2008, Plaintiff reported that when she had a migraine, she would go to a dark room and be in bed all day. She reported that it was hard to stand in the shower for very long, and if the water hit her stomach, it caused pain. She reported that she cooked simple meals, could not stand to cook a full meal, did the laundry, light housework, dusted, vacuumed when she could, and tried to do a little every day. (Tr. 148). She

-6-

also reported that she drove a car and shopped for food once a week.  (Tr. 149).

In an October 22, 2008  Function Report - Adult, Plaintiff reported that the pain was more intense and often, and the migraines were more frequent.  (Tr. 162).  She reported it was difficult at times to dress due to the pain in her stomach and fibromyalgia.  She reported that she did not do much house cleaning any more, and that it was painful to drive.  She reported that her stomach pain was getting worse and the scar tissue had built back up again.  She also reported that the fibromyalgia pain was "all the time."  (Tr. 169).

In a Disability Report - Appeal, dated September 30, 2008, Plaintiff reported that she could not afford to see a doctor or get her medication refilled, and was in constant pain, especially without her medicine.  (Tr. 174).  In a November 10, 2008 Disability Report - Appeal, Plaintiff reported taking the following medicines: Amitrex; Cymbalta; Darvon; Exedrin Migraine; Ibuprofen; Lyrica; and Vitamin D.  (Tr. 182).  Again, Plaintiff reported that she had increased stomach pain and headaches, and was not able to afford the doctor or medications.  (Tr. 184).

At the August 17, 2009 hearing, Plaintiff stated that the major impairments that kept her from being able to work were abdominal adhesions, migraines, fibromyalgia, and swelling of her feet.  (Tr. 12).  She also testified that her doctor had increased her dose of Lyrica and "maybe it will get better."  (Tr. 18).  She stated that the fibromyalgia limited her ability to stand, sit and walk, depending on the day and how medicated she was.  She said that she took medication before the hearing, "so I don't feel really bad, I can't think really well but I don't feel real bad."  (Tr. 18). She also stated that her feet and legs did not swell real often, and that she had been put on all different kinds of medication for her depression and "I really don't want to do that again."  (Tr. 19-21).  She stated that she never had a panic attack at work, did her housework only when she

-7-

felt up to it, dusted, put dishes in the dishwasher, wiped the counters, and did "normal housework." She stated that the doctor said her Vitamin D level was very low, which could be causing part of the pain, so she was being given vitamins. (Tr. 28). Plaintiff most recently was working at the Cazort Law Firm a few hours a week, and Brenda Sands, a co-worker, stated that after Plaintiff worked for six months, she started missing a lot of work, many times she was out, and that her absences got worse. (Tr. 33). Plaintiff was let go for missing work, and was unable to do the job because of the illnesses, but recently she went back to work at the firm a few hours a week. (Tr. 34-35).

**III.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden

-8-

of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  <u>Pearsall v. Massanari</u>, 274 F. 3d 1211, 1217 (8th Cir. 2001); <u>see</u> <u>also</u> 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  <u>See</u> 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  <u>See</u> <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## IV.  Discussion:

### A.  Subjective Complaints and Credibility Analysis:

The Court will first address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints,

AO72A
(Rev. 8/82)

including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id. As the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff contends that her abdominal adhesions, fibromyalgia, migraine headaches and depression were disabling, the evidence of record does not support this conclusion.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment.  (Tr. 55).  He referred to Plaintiff's inconsistent statements regarding maters relevant to the issue of disability.  For example, the ALJ referred to the fact that Plaintiff applied for and collected unemployment compensation for the 2nd, 3rd, and 4th quarters of 2008 as well as the 1st and 2nd quarters of 2009.  (Tr. 119).  The ALJ concluded that Plaintiff's receipt of unemployment compensation was evidence that the allegations regarding the limiting effects of her impairments were not fully supported.

The fact that Plaintiff applied for and collected unemployment compensation indicates that

-10-

Plaintiff was able to work and may be some evidence, though not conclusive, to negate her claim that she was disabled during the relevant time period. <u>Jernigan v. Sullivan</u>, 948 F.2d 1070, 1074 (8th Cir. 1991). This is not the only factor the ALJ considered in making his credibility determination. Plaintiff's daily activities also belied Plaintiff's allegation of disabling pain. In September of 2008, Plaintiff told Dr. Efird that she lived with her boyfriend and was able to perform basic self-care tasks satisfactorily, and perform household chores satisfactorily. At the hearing, Plaintiff testified that she cooked "easy things," did her own housework when she felt up to it, dusted, put dishes in the dishwasher, wiped off the counters, and did "normal housework." She testified that she had gone back to work at the Cazort Law firm, working two half days, and that she had just worked there three weeks prior to the date of the hearing

Plaintiff indicated on more than one occasion that she was unable to afford medication. However, Plaintiff was able to afford to buy cigarettes, indicating in the record that she smoked 1 ½ packs of cigarettes daily. <u>See</u> <u>Riggins v. Apfel</u>, 177 F.3d 689, 693 (8th Cir. 1999)(Although Plaintiff claimed he could not afford medication, there was no evidence to suggest that he sought any treatment offered to indigents or chose to forego smoking to help finance pain medication). The Eighth Circuit has held that an individual's inability to afford medical services is not determinative. <u>See</u> <u>Murphy v. Sullivan</u>, 953 F.2d 383, 386-87(8th Cir. 1992). There is no record of Plaintiff being denied treatment because of finances, or of Plaintiff attempting to seek treatment from a clinic for indigents. <u>Id.</u>

With respect to Plaintiff's depression and anxiety disorder, Plaintiff never sought or received treatment by specialized mental health experts. In addition, Dr. Efird, an examining consultant, found that Plaintiff had the capacity to perform basic cognitive tasks required for basic

AO72A
(Rev. 8/82)

work-like activities, and Dr. Gale, a non-examining consultant, found Plaintiff would be able to engage in unskilled work.

With respect to Plaintiff's physical assessment, Dr. McGowan, one of Plaintiff's treating physicians, noted that Plaintiff thought the Lyrica she had taken and discontinued might have helped her, and Dr. McGowan restarted Plaintiff on Lyrica for her fibromyalgia. Dr. Takach, a non-examining consultant, assessed Plaintiff as being able to perform light work with certain limitations.

The ALJ gave great weight to the opinion of Dr. Efird, since it was consistent with the medical evidence as a whole. The ALJ also gave great weight to Dr. Kay Gale, since her opinion was consistent with the medical evidence as a whole. The ALJ further found that due to the lack of relevant medical records from Plaintiff's treating physicians, he was unable to give much weight to their opinions "except to agree that the claimant does have the severe impairments as documented in this decision."

The Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**B.     RFC Assessment:**

The ALJ found that Plaintiff had the RFC to perform light work with certain limitations. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart,

390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform light work with limitations.  In making this RFC determination, the ALJ gave great weight to the opinions of Dr. Efird and Dr. Gale.  As stated earlier, Dr. Efird indicated that Plaintiff had the capacity to perform basic cognitive tasks required for basic work like activities, and had no remarkable problems with attention/concentration.  He also found that Plaintiff generally completed tasks assigned during the evaluation and had no remarkable problems with persistence during the evaluation.

In her Mental RFC Assessment, Dr. Gale found that Plaintiff was able to perform work where interpersonal contact was incidental to work performed; where complexity of tasks was learned and performed by rote, with few variables and where little judgment was used; and where supervision required was simple, direct and concrete.  She concluded that Plaintiff could performed unskilled work.

In a Physical RFC Assessment, Dr. Takach found Plaintiff could function with light work

-13-

limits, and the only limitations Plaintiff had related to the fact that she could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl.

The Court also finds it noteworthy that Plaintiff saw Dr. Norys and Dr. McGowan in early 2008 for her headaches and fibromyalgia. However, there are no medical records indicating that Plaintiff sought or received treatment thereafter for her fibromyalgia, depression, or anxiety, until mid 2009, when she saw Dr. Rebecca Barrett. Based on the entire evidence of record, the Court finds substantial evidence supports the ALJ's RFC findings.

**C.     Hypothetical Proposed to Vocational Expert:**

The ALJ submitted questions to the VE which fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing other work such as a hand packager, sewing machine operator, or poultry processing worker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

In her brief, Plaintiff asserts that the ALJ had formulated the hypotheticals prior to the hearing (he submitted them to the VE at the beginning of the hearing through interrogatories) and was therefore already of the mind that it was either one way or another. (Doc. 9 at p. 13). Plaintiff argues that the ALJ was "predisposed to finding against Plaintiff and that he failed to

AO72A
(Rev. 8/82)

discuss or outright ignored contrary testimony of Plaintiff." (Doc. 9 at p. 13). "ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased." Perkins v. Astrue, 2011 WL 3477199, at *7 (8th Cir. 2011), citing Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Plaintiff bears the burden of producing sufficient evidence to overcome this presumption, and is required to show that the ALJ's behavior, in the context of the whole case, is "so extreme as to display clear inability to render fair judgment." Perkins, 2011 WL 3477199 at *7-8. Plaintiff has not made a showing that the ALJ's conduct rose to this level.

**V.      Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and affirms the ALJ's decision. Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this 24th day of August, 2011

/s/ *Erin L. Setser*

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-15-